**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

JUNE SCOTT,

        Plaintiff,

v.                                       Case No. 6:15-cv-533-Orl-37TBS

CITY OF ORLANDO; MICHAEL
FIORENTINO-TYBURSKI; and OSSIE
BATTLE,

        Defendants.

---

## ORDER

This matter is before the Court on the following:

1.    Defendants' Motion to Dismiss the Complaint (Doc. 17), filed June 5, 2015; and

2.    Plaintiff's Response in Opposition to Defendants' Motion to Dismiss the Complaint (Doc. 18), filed June 16, 2015.

## BACKGROUND[1]

This action arises from the lawful arrest of Plaintiff by two "certified" law enforcement officers—Ossie Battle and Michael Fiorentino-Tyburski ("**Defendant Officers**")—who are employed by the City of Orlando Police Department. (*See* Doc. 1, ¶¶ 9–12, 14–16, 30.) During the lawful arrest, Officer Battle allegedly used such physical force against Plaintiff—who is a "frail" female standing only five feet four inches tall and weighing only 110 pounds—that she suffered a depression fracture of her left

---

[1] The facts set forth in this Order are taken from the Plaintiff's Complaint and construed in the light most favorable to Plaintiff. *See Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003).

tibia. (*See id.* ¶¶ 18, 20–22, 29.) After her arrest, Plaintiff "suffered for five days in the Orange County jail with only palliative treatment." (*Id.* ¶ 23.) Upon release from jail, Plaintiff underwent surgery and "recuperative treatment" that cost "over $57,000.00;" however, her injuries remain "permanent and debilitating" and foreclose her return to work "in any of her former occupations." (*See id.* ¶¶ 24–27.)

According to the Complaint, Plaintiff's troubles began when her "ex-husband threatened to kill her by strangulation," and she escaped from her apartment by using "a kitchen knife to ward" him off (the "**Domestic Dispute**"). (*See id.* ¶ 19.) In the midst of her escape, Plaintiff encountered the Officer Defendants, who were responding to a call concerning the Domestic Dispute.[2] (*See id.* ¶ 12.) Officer Fiorentino-Tyburski "spotted Plaintiff walking away from the apartment complex" and ordered her to "stop at gunpoint" (the "**Order**"). (*See id.* ¶ 20.) Plaintiff complied with the Order; however, she "verbally protested her detention." (*See id.* ¶ 20.) Officer "Battle then arrived, placed Plaintiff in handcuffs, and then, when Plaintiff continued to protest her arrest for merely defending herself, [Officer] Battle bodily threw Plaintiff onto the asphalt, breaking Plaintiff's leg." (*Id.* ¶¶ 21, 29–30.)

Pursuant to 42 U.S.C. § 1983, Plaintiff now asserts claims against the Defendant Officers and the City of Orlando ("**City**") for violating her rights under the Fourth and Fourteenth Amendments to the U.S. Constitution. (*Id.* ¶¶ 36–48.) Plaintiff claims that: (1) Officer Battle is liable for his actual use of unreasonable force against Plaintiff; (2) Officer Fiorentino-Tyburski is liable for failing to protect Plaintiff from Officer Battle (*see id.* ¶¶ 32–34); and (3) the City is liable pursuant to *Monell v. Department of Social*

---

[2] The Defendant Officers were in uniform and arrived at Plaintiff's apartment complex the evening of **May 25, 2014**, in a marked police car. (*See* Doc. 1, ¶¶ 12–14.)

*Services*, 436 U.S. 658 (1978), because its policies and procedures caused the Defendant Officers' unconstitutional actions ("***Monell* Claim**") (*see id.* ¶¶ 42–48).

In a jointly-filed Motion to Dismiss, Defendants argue that the Defendant Officers are entitled to qualified immunity (*see* Doc. 17, pp. 2–5), and Plaintiff has not alleged sufficient facts to sustain her *Monell* Claim (*see id.* at 5–7). Plaintiff responded (Doc. 18), and the matter is now ripe for adjudication.

## STANDARDS

### I.  Pleading Standards

When a complaint does not comply with minimum pleading requirements or otherwise "fails to state a claim to relief that is plausible on its face," the defendant may seek dismissal of the complaint under Rule 12(b)(6). *Ashcroft v. Iqbal*, 556 U.S. 662, 672, 678–79 (2009). A complaint states a plausible claim if it includes "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 679 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Courts must resolve a Rule 12(b)(6) motion based solely on the complaint, its attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007). Further, courts must accept all well-pled factual allegations— but not legal conclusions—in the complaint as true. *See id.*

### II.  The Fourth Amendment

Under the Fourth Amendment to the U.S. Constitution, citizens have a right to be secure against "unreasonable" seizures of their person. *See* U.S. Const. amend. IV; *Graham v. Connor*, 490 U.S. 386, 394–95 (1989). An "unreasonable" seizure occurs when a law enforcement officer subjects a person to physical force that is objectively

unreasonable when "judged from the perspective of a reasonable officer on the scene"—with "allowance for the fact that" decisions about the amount of force that is necessary are often made by officers who are confronted with "tense, uncertain, and rapidly evolving" situations. *See Graham*, 490 U.S. at 396.

Because lawful arrests necessarily involve "some degree of physical coercion," a court's objective reasonableness inquiry requires careful balancing of the "governmental interests at stake" against "'the nature and quality of the intrusion on the individual's Fourth Amendment interests.'"[3] *See id.* (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)); *see also Reese v. Herbert*, 527 F.3d 1253, 1272 (11th Cir. 2008) (noting that a "typical arrest involves some force and injury"). Factors pertinent to the objective reasonableness inquiry include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Mobley v. Palm Beach Cnty. Sheriff Dep't*, 783 F.3d 1347, 1354 (11th Cir. 2015); *Hoyt v. Cooks*, 672 F.3d 972, 978–79 (11th Cir. 2012).

## III.    42 U.S.C. § 1983

Section 1983 provides aggrieved persons with a procedural mechanism to seek redress for Fourth Amendment violations that are committed while a defendant is acting under color of state law. 42 U.S.C. § 1983. Acts performed by law enforcement officers—even if illegal or unauthorized—are considered to have been performed under color of state law so long as the acts are done in the defendants' capacity as a law enforcement officer. *See West v. Atkins*, 487 U.S. 42, 49–50 (1988). To avoid an

---

[3] The inquiry is fact-specific and is aptly described as a "fact-bound morass of 'reasonableness.'" *Scott v. Harris*, 550 U.S. 372, 383 (2007); *McCullough v. Antolini*, 559 F.3d 1201, 1206 (11th Cir. 2009).

individual liability claim under § 1983, law enforcement officers may invoke the defense of qualified immunity—which protects "all but the plainly incompetent or one who is knowingly violating federal law." *See Depalis-Lachaud v. Noel*, 505 F. App'x 864, 867 (11th Cir. 2013). Courts should resolve qualified immunity issues at the pleading stage if possible. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

## DISCUSSION

### I.     Qualified Immunity

It is apparent from the Complaint that the Defendant Officers were performing discretionary functions during their interactions with Plaintiff; thus, the Court must afford them qualified immunity unless—viewed in the light most favorable to Plaintiff—the factual allegations in the Complaint support reasonable inferences that: (1) the Defendant Officers' respective conduct violated the Fourth Amendment; and (2) the illegality of such conduct "was clearly established" on **May 25, 2014**. *See Epps v. Watson*, 492 F.3d 1240, 1243 (11th Cir. 2007) (noting that a defendant is entitled to qualified immunity unless "the plaintiff's allegations state a claim of violation of clearly established law"); *see also Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) (instructing courts to conduct the objective reasonableness inquiry based on the conduct "alleged in alleged in the complaint"). If the "state of the law" provided the Defendant Officers with "fair warning that [their] alleged treatment [of the Plaintiff] was unconstitutional," then the right asserted is "clearly established" for purposes of the qualified immunity analysis. *See Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

### A.     Officer Battle

Defendants argue that Officer Battle is entitled to qualified immunity based on Plaintiff's allegations that Officer Battle "threw her to the ground in response to her

continued protest." (*See* Doc. 17, pp. 3–4.) The Court disagrees.

On a fair reading, the allegations of the Complaint are that: (1) the Defendant Officers had probable cause to arrest Plaintiff for an unspecified crime; (2) Plaintiff was a small, frail, elderly woman escaping from a violent encounter who complied with Officer Fiorentino-Tyburski's Order to stop; (3) Officer Battle handcuffed the physically compliant Plaintiff behind her back without incident; and (4) although Plaintiff was secure and posed no threat to reasonable officers or to the public, Officer Battle threw Plaintiff to the ground with sufficient force to break her tibia. (*See* Doc. 1.)

The Court's reading of the Complaint supports the inference that Officer Battle violated Plaintiff's Fourth Amendment right to be free from the use of unreasonable force during a lawful arrest.[4] Further, by May 25, 2014, the illegality of Officer Battle's alleged conduct was clearly established. *See Lee v. Ferraro*, 284 F.3d 1188, 1198 (11th Cir. 2002) (holding that an officer used objectively unreasonable force when he slammed an arrestee's head against a car trunk "*after* she was arrested and secured in handcuffs"); *Slicker v. Jackson*, 215 F.3d 1225 (11th Cir. 2000) (denying qualified immunity to officer who slammed a handcuffed arrestee's head into the pavement). Thus, the Court finds that Officer Battle is not entitled to qualified immunity at the pleading stage.

---

[4] Defendants' emphasis on the allegations in the Complaint that Plaintiff verbally protested her arrest to the Defendant Officers both before and after she was handcuffed. (*See* Doc. 17.) From these allegation, numerous tangential inferences must be drawn in Officer Battle's favor before one can find that it was objectively reasonable to throw a small, unarmed, and handcuffed arrestee to the ground with force that "is generally seen in car crashes and other high impact losses." (Doc. 1.) It is impermissible to draw such inferences in Officer Battle's favor at the pleading stage. *See Epps*, 492 F.3d at 1243; *see also Tellabs*, 551 U.S. at 323. Thus, the allegations concerning Plaintiff's verbal protests do not alter the Court's analysis.

### B.   Officer Fiorentino-Tyburski

Plaintiff's claim against Officer Fiorentino-Tyburski is premised on his alleged failure to protect Plaintiff from Officer's Battle's unreasonable use of force. (*See* Doc. 1; *see also* Doc. 18, pp. 9–11.) For more than a decade, the U.S. Court of Appeals for the Eleventh Circuit has recognized that an officer may violate the Fourth Amendment if he fails to "intervene when another officer uses excessive force." *See Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 924–25 (11th Cir. 2000). Such liability "only arises when the officer is in a position to intervene and fails to do so." *Id.* An officer may be in a position to intervene when the unconstitutional use of force occurs in the officer's presence and is prolonged or anticipated by the officer. *See id.* (holding a bystander officer liable based on evidence that he was at the scene with a flashlight, and was in "voice contact" with the co-defendant during a two minute K-9 officer attack); *see also Ensley v. Soper*, 142 F.3d 1402, 1407–08 (11th Cir.1998) (finding no liability absent evidence that defendant "had an opportunity to observe or halt" the excessive force).

Defendants argue that Officer Fiorentino-Tyburski is entitled to qualified immunity because the Complaint does not include factual allegations showing that he "was in a position to intervene or could have intervened and failed to do so, or that he could have even stopped the single action that allegedly caused Plaintiff's injury." (*See* Doc. 17, pp. 4–5.) Plaintiff counters that her allegations that Officer Fiorentino-Tyburski had a duty to prevent Officer Battle's unreasonable use of force are sufficient pending discovery of facts that purportedly are in the Defendants' sole possession—such as how long Officer Fiorentino-Tyburski "had to intervene, what he saw occurring, and what [he] could have done to intervene." (*See* Doc. 18, pp. 9–11.)

Plaintiff's argument is unpersuasive. Nothing in the Complaint permits a plausible inference that Officer Fiorentino-Tyburski could or should have anticipated Officer Battle's unconstitutional conduct. (*See* Doc. 1.) Further, Plaintiff has cited no case where the U.S. Supreme Court, the Eleventh Circuit, or the Supreme Court of Florida held that a duty to intervene arose under facts materially similar to those alleged in Plaintiff's Complaint. (*See* Doc. 18.) Accordingly, Plaintiff's claims against Officer Fiorentino-Tyburski are due to be dismissed.

## II.   The City

The City may be liable under § 1983 only if it "can be fairly said that the [C]ity itself is the wrongdoer." *See Collins v. City of Harker Heights*, 503 U.S. 115, 122 (1992). Cities are considered wrongdoers only when "execution" of a city's "policy or custom" is the moving force behind a constitutional violation. *See Mercado v. City of Orlando*, 407 F.3d 1152, 1161 (11th Cir. 2005) (noting that *respondeat superior* is not a basis for imposing liability against a city under § 1983). For instance, if a plaintiff is injured by the unconstitutional conduct of a city employee *after* the city receives "actual notice" of prior similar conduct, and *after* the city either condoned such prior conduct or failed to provide training that would have prevented the conduct that resulted in injury to the plaintiff, then the city may be subject to *Monell* liability due to its deliberate indifference of the risk posed to the plaintiff and other citizens.[5] *See Monell*, 436 U.S. at 690–93; *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

---

[5] *Compare Wright v. Sheppard*, 99 F.2d 665, 675 (11th Cir. 1990) (rejecting failure to train claim where city had no "actual notice of unconstitutional practices" and there was no "history of widespread prior abuse"), *with Rivas v. Freeman*, 940 F.2d 1491, 1495–96 (11th Cir. 1991) (finding deliberate indifference where sheriff knew of prior instances of mistaken identity).

Defendants contend that Plaintiff's allegations against the City are unclear and insufficient to support her *Monell* Claim. (*See* Doc. 17, pp. 6–7.) Plaintiff counters that dismissal of her *Monell* Claim is not warranted because her Complaint includes allegations that: (1) the City ratified or approved the Defendant Officers' alleged misconduct by failing to discipline them after Plaintiff's arrest; (2) the City engaged in a "pattern of conduct showing a willful disregard for citizens' rights as well as a failure to train its officers on proper use-of-force;" and (3) the City has "paid in excess of $3.3 million" for civil rights violations since 2012. (*See* Doc. 18, pp. 12–14.)

The Court finds that Plaintiff's allegations are too vague and conclusory to permit the necessary inference that a policy or custom of the City was the moving force behind Officer Battle's alleged misconduct.[6] Indeed, courts routinely dismiss complaints with allegations similar to those set forth in Plaintiff's Complaint. *See e.g. Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1328–29 (11th Cir. 2015) (affirming dismissal of claims against city that were supported by only conclusory allegations that the city was "on notice" of unconstitutional conduct by untrained employees); *Ganstine v. Williams*, 476 F. App'x 361, 363 (11th Cir. 2012) (affirming dismissal of claim against municipality); *Adcock v. Baca*, 157 F. App'x 118, 120 (11th Cir. 2005) (same). Accordingly, Plaintiff's claims against the City are due to be dismissed.

## CONCLUSION

It is hereby **ORDERED AND ADJUDGED**:

---

[6] "Civil rights" encompass interests far beyond the right to be free from use of excessive force. For this reason—and others—Plaintiff's allegation that the City has paid more than $3.3 million for civil rights violations since 2012 does not support an inference that the City condones or is deliberately indifferent to use of excessive force by its law enforcement officers.

1.      Defendants' Motion to Dismiss the Complaint (Doc. 17) is **GRANTED IN PART AND DENIED IN PART**.

    a.      The Motion is **GRANTED** with respect to Plaintiff's claims against Defendants City of Orlando and Michael Fiorentino-Tyburski.

    b.      The Motion is **DENIED** as to Plaintiff's claims against Defendant Ossie Battle.

2.      Plaintiff's claims against the City of Orlando and Michael Fiorentino-Tyburski are **DISMISSED WITHOUT PREJUDICE**.

3.      On or before **November 16, 2015**, Plaintiff may file an Amended Complaint to address the deficiencies noted in this Order.

4.      If Plaintiff fails to timely file an Amended Complaint, then this action will proceed with respect to Plaintiff's claims against Defendant Ossie Battle only.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on October 30, 2015.

ROY B. DALTON JR.
United States District Judge

Copies:

Counsel of Record