# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

JUNE SCOTT,

        Plaintiff,

v.   Case No. 6:15-cv-533-Orl-37TBS

CITY OF ORLANDO; and
OSSIE BATTLE,

        Defendants.

## ORDER

This cause is before the Court on the following matters:

1. Plaintiff's Dispositive Motion for Summary Judgment for Her First Amended Complaint's Count I (Excessive Use of Force) Against Defendant Battle and Defendant Battle's Affirmative Defenses (Doc. 36), filed April 4, 2016;

2. Defendant Officer Ossie Battle's Motion for Summary Judgment and Incorporated Memorandum of Law (Doc. 39), filed April 4, 2016;

3. Defendant's Response to Plaintiff's Motion for Summary Judgment (Doc. 44), filed April 19, 2016;

4. Plaintiff's Memorandum in Opposition to Defendant Ossie Battle's Motion for Summary Judgment (Doc. 45), filed May 2, 2016; and

5. Plaintiff's Reply to Defendant's Response to Plaintiff's Motion for Summary Judgment (Doc. 46), filed May 3, 2016.

Upon consideration, the Court concludes that the Motions for Summary Judgment (Docs. 36, 39) are due to be denied.

## BACKGROUND[1]

This action arises from the arrest of Plaintiff, June Scott ("**Scott**"), by Defendant, Ossie Battle ("**Battle**"), and Michael Fiorentino-Tyburski ("**Fiorentino**"), both of whom are law enforcement officers employed by the City of Orlando Police Department. (*See* Doc. 25; Doc. 37-1.) The parties do not dispute whether the arrest was supported by probable cause. Rather, they dispute whether excessive force was used to effectuate the arrest.

On the evening of May 25, 2014, Battle and Fiorentino were dispatched to an apartment complex in response to a caller's report that a woman threatened him with a knife, threw the knife over a fence, and ran away from the apartment. (Doc. 37- 2; Doc. 37-1, pp. 9–10; Doc. 37-7, p. 20.) Fiorentino was first to arrive and immediately observed a female who fit the description of the subject—later identified as Scott—fleeing the apartment complex on foot. (Doc. 37-1, p. 18.) Fiorentino ordered Scott to stop, and she complied. (Doc. 37-1, p. 20; Doc. 37-4.) However, Scott "yelled" and "cursed" in protest to the stop. (Doc. 37-7, p. 26; Doc. 37-1, p. 17; Doc. 37-4; Doc. 38, pp. 66–67.) Officer Battle then arrived at the scene and handcuffed Scott. (Doc. 37-7, pp. 24–25; Doc. 37-9.)

While Battle was handcuffing her, Scott continued to vehemently protest and curse. (Doc. 38, pp. 29, 69; Doc. 37-7, p. 30; Doc. 37-9; Doc. 37-4). After she was handcuffed, Scott "jerked" her arms and pulled away from Battle's grasp. (Doc. 37-7, pp. 29–30; Doc. 38, p. 29.) Battle then "took her to the ground." (Doc. 37-7; Doc. 39.) The

---

[1] Unless noted otherwise, the facts included in this section are undisputed and have been gleaned from the parties' filings. Such facts are recited solely for the purpose of resolving the pending motions and should not be construed as factual findings of the Court.

parties present widely divergent accounts of the nature and force of the "take down," as well as the physical injury that it allegedly caused. According to Scott's filings, Battle "threw" and "slammed" her to the ground with such force that her knee was broken. (Doc. 38, pp. 30, 56.) Conversely, Battle's filings show that he used a "leg sweep" maneuver and merely placed Scott's "bottom" on the ground while holding her arms. (Doc. 37-7, pp. 30–31; Doc. 37-9.)

On April 1, 2015, Scott filed this action pursuant to 42 U.S.C. § 1983, asserting claims against Battle, Fiorentino, and the City of Orlando ("**the City**") for allegedly violating her rights under the Fourth and Fourteenth Amendments of the U.S. Constitution. Her original Complaint asserted that: (1) Battle was liable for using unreasonable and excessive force; (2) Fiorentino was liable for failing to protect Scott from such force; and (3) the City was liable pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978) to the extent that the City's policies and procedures caused the alleged violation of her rights. (Doc. 1, ¶¶ 42–48.)

On Defendants' motion, the Court dismissed without prejudice the claims against Fiorentino and the City. (Doc. 24.) Scott later filed the operative Amended Complaint, which omitted Fiorentino as a defendant and added greater detail to the claim against the City. (Doc. 25.) In March 2016, the parties stipulated to a voluntary dismissal of Scott's case against the City.[2] (Doc. 35.) Accordingly, only Scott's excessive force claim against Battle remains, and it is the subject of the competing motions for summary judgment now before the Court. For the reasons stated below, the motions are due to be denied.

---

[2] The Notice of Voluntary Dismissal (Doc. 35) is self-executing pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii). It follows that the claims against the City are dismissed without prejudice.

**STANDARDS**

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

To defeat a motion for summary judgment, the non-movant must "go beyond the pleadings, and present affirmative evidence to show that a genuine issue of material fact exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006) (citation omitted). The Court must view the evidence and all reasonable inferences drawn from the evidence in the light most favorable to the non-movant. *See Battle v. Bd. of Regents*, 468 F.3d 755, 759 (11th Cir. 2006). However, "[a] court need not permit a case to go to a jury . . . when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 743 (11th Cir. 1996).

The same standard applies where, as here, the parties submit competing motions for summary judgment, and "the denial of one does not require the grant of another." *See Perez-Santiago v. Volusia Cty.*, No. 6:08-cv-1868-Orl-28KRS, 2010 WL 917872, at *2 (M.D. Fla. Mar. 11, 2010).

**DISCUSSION**

**I.    Battle's Motion for Summary Judgment**

Battle moves for summary judgment on the ground that he is entitled to qualified immunity from Scott's excessive force claim. (Doc. 39.) Qualified immunity protects

4

government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

In order to receive such immunity, "the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Id.*; *see also Martinez v. City of Pembroke Pines*, No. 15-12239, 2016 WL 1593673, at *4 (11th Cir. Apr. 21, 2016). To do so, the plaintiff must present facts which reveal the violation of a constitutional right that was "clearly established" at the time of the conduct at issue. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

### 1. Violation of a Constitutional Right

It is undisputed that Battle was acting within his discretionary authority during the arrest. (*See* Doc. 36, p. 16.) Thus, the burden shifts to Scott to show that Battle violated a constitutional right that was "clearly established" at the time of the arrest. *See Terrell v. Smith*, 668 F.2d 1244, 1250 (11th Cir. 2012); *see also Plumhoff v. Rickard*, 134 S.Ct. 2012, 2023 (2014).

Scott asserts that Battle violated her Fourth Amendment right to be free from excessive force during an arrest. Although the right to be free from excessive force is firmly established, the contours of excessive force vary with the unique facts and circumstances of each particular case. *See Lee*, 284 F.3d at 1197–98.

"Objective reasonableness"—the standard under which excessive force claims are

analyzed—helps courts distinguish force that is constitutionally sound from that which is not. *See Plumhoff*, 134 S.Ct. at 2020 (2014); *see also Salvato v. Miley*, 790 F.3d 1286, 1293 (11th Cir. 2015). Broadly stated, this standard balances the amount of force against the need for its use. *See Graham v. Connor*, 490 U.S. 386, 396–97 (1989).

In evaluating the objective reasonableness of the use and extent of force applied in a given situation, courts must consider the totality of the circumstances and view them from the perspective of a reasonable officer at the scene. *See Martinez*, 2016 WL 1593673 at *4 ("Reasonableness in this context depends on all the circumstances relevant to an officer's decision to use force and the amount of force used.") The analysis calls attention to the following factors set forth in *Graham v. Connor*: (1) the severity of the crime; (2) the quality and nature of any immediate threat the subject poses to the safety of officers or others; and (3) the subject's active resistance or attempts to evade arrest, if any. *See* 490 U.S. at 396–97. The United States Court of Appeals for the Eleventh Circuit has also considered the extent of injury inflicted by the force to determine its excessiveness. *See Leslie v. Ingram*, 786 F. 2d 1533, 1536 (11th Cir. 1986).

Here, Scott places little emphasis on the severity of the crime factor.[3] Rather, she presents argument and record evidence showing that she did not pose an immediate threat or flight risk, and did not attempt to resist. For instance, Scott points to evidence— including Battle's own deposition testimony—showing that she was handcuffed and secured *before* the take-down. (Doc. 37-7, p. 25; Doc. 38, pp. 29–30.) Scott also underscores evidence suggesting that Battle physically "outclassed" her, such that he

---

[3] Notably, Scott expressly concedes in her summary judgment motion that Battle "had the right to handcuff Plaintiff for his, the public's, and Plaintiff Scott's safety." (Doc. 36, p. 4.)

6

could handily control Scott and could not reasonably perceive her as a threat.[4] (Doc. 36, pp. 2, 5; Doc. 37-7, pp. 4–5, 15, 17.) Further, she highlights testimony and records demonstrating Battle's acknowledgment that Scott dispensed with the knife before he approached her. (Doc. 37-7, p. 26; Doc. 37-9; Doc. 37-2.) Finally, Scott presents record evidence showing that Battle "threw" her to the ground with such force that he caused significant injury to her knee—specifically, a depression fracture of her left tibial plateau—and rendered Scott unable to walk for a period of months after the incident. (Doc. 36, p. 2; Doc. 37-1, pp. 18, 27–28; Doc. 37-7, pp. 39–40; Doc. 38, pp. 30–31; Doc. 45-8.)

On the basis of this record, Scott maintains that Battle's use of force was unreasonable and therefore violated her Fourth Amendment right to be free from excessive force. The Court agrees, as the record viewed most favorably to Scott reflects that the force used on her was not reasonably proportionate to its need, if any. Doubtless, the severity of the crime weighs against Scott, and she concedes that there was sufficient reason to handcuff and detain her. However, the remaining *Graham* factors militate in Scott's favor.

First, there is record evidence supporting Scott's contention that she did not pose a threat at the time of the "take down"—the point at which she was handcuffed. Beyond the aforementioned evidence, the *absence* of any evidence indicating that Scott was frisked or "pat down" before or after she was handcuffed bolsters the conclusion that she did not present an immediate threat.[5] Further, the record supports Scott's contention that

---

[4] Battle, who is approximately 6'1" and weighs 250 pounds, testified that he bench presses 320 pounds. (Doc. 37-7, pp. 4-5.) At the very least, this much supports a reasonable inference that he was capable of physically dominating Scott, who is 5'4" and weighed approximately 110 pounds at the time of the incident. (Doc. 36, p. 2.)

[5] When asked at his deposition if he or anyone else frisked Scott, Battle testified

7

she neither resisted arrest nor attempted to flee when "thrown" to the ground. Even portions of Battle's deposition testimony call into question whether the decision to put Scott on the ground was animated by active resistance or risk of flight. At one point, Battle simply testifies that Scott was taken down because she would not comply with his order to sit down. (*See* Doc. 37-7, p. 32.) Finally, a juror could reasonably glean from Scott's filings a causal connection between the "take down" and the significant injury to her knee.

In sum, the record before the Court—when viewed in a light most favorable to Scott for purposes of evaluating Battle's summary judgment motion—reveals that the force used by Battle was unnecessary and disproportionate. Although Battle's filings *suggest* a contrary view, they do not remove all genuine issues of material fact as to the need, nature, and amount of force he applied. Accordingly, the Court concludes that Scott has fairly carried her burden in demonstrating a violation of her constitutional right to be free from excessive force.

### 2. Clearly Established Right

Despite evidence showing his violation of a constitutional right, Battle is entitled to qualified immunity unless the right was "clearly established" at the time of Scott's arrest. To meet this threshold, the right must be "sufficiently definite" such that a reasonable officer would have fair warning that the challenged conduct amounts to its violation. *See Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014). An officer is said to have "fair warning" if the unlawfulness of the conduct is apparent in case law at the time of the event, or the conduct "lies so obviously at the very core of what the Fourth Amendment prohibits that

---

that he could not remember. (Doc. 37-7, p. 60.) The Court is unable to find any evidence in the record showing that Scott was, in fact, frisked.

the unlawfulness . . . was readily apparent . . . notwithstanding the lack of fact-specific case law." *Vinyard v. Wilson*, 311 F.3d 1340, 1355 (11th Cir. 2002) (*citing Lee*, 284 F.3d at 1199). These are known as the "state of the law" and "obvious clarity" standards. *See Vinyard*, 311 F.3d at 1355.

Slamming a handcuffed arrestee to the ground under the facts and circumstances presented by Scott arguably fits the obvious clarity standard. In any event, legal precedent at the time of the arrest provided fair warning that the conduct was unlawful and violated Scott's right to be free from excessive force. As the Court pointed out in its Order of dismissal (Doc. 24), *Lee v. Ferraro*, 284 F.3d 1188 (11th Cir. 2002) and *Slicker v. Jackson*, 215 F.3d 1225 (11th Cir. 2000) are just two cases which signaled the constitutional infirmity of such conduct as of May 25, 2014—the date of the arrest.

In *Lee*, as in this action, the plaintiff was a female arrestee whose physique was slight in comparison to that of the male officer. 284 F.3d at 1191. In effectuating the arrest—following a traffic stop—the officer "grabbed" and twisted the plaintiff's wrists while handcuffing her. *Id.* After she was handcuffed and "secured," the officer pushed the plaintiff and slammed her head down on the trunk of her vehicle. *Id.* Although she did not sustain head injuries as a result, the plaintiff suffered nerve compression injuries in one wrist. *Id.* at 1192. On these facts, the court found it ". . . abundantly clear . . . that [the officer] used force that was plainly excessive, wholly unnecessary, and, indeed, grossly disproportionate under *Graham*," and the denial of qualified immunity was therefore appropriate. *Id.* at 1198.

Similarly, in *Slicker*, the Eleventh Circuit found it appropriate to deny summary judgment to police officers on the basis of qualified immunity. 215 F.3d at 1232. There,

officers kicked a handcuffed arrestee and at least one of them "slammed" his head on the ground. *Id.* at 1227–28. Noting record evidence which showed that the arrestee "was handcuffed and did not resist, attempt to flee, or struggle with the officers in any way," the court determined that a fact finder could reasonably conclude that the officers used excessive force. *Id.* at 1233.

The cases relied upon by Battle to support qualified immunity are clearly distinguishable. Indeed, some actually undermine his position. For instance, although the district court entered summary judgment favorable to law enforcement officers on excessive force claims in *Fernandez v. City of Cooper*, 207 F. Supp. 2d 1371 (S.D. Fla. 2002), the court carefully catalogued facts that are absent here. Importantly, the undisputed evidence in *Fernandez* established that the arrestee, a 6'4" 225-pound man, continued to forcefully resist arrest—both before and after he was handcuffed. *Id.* at 1373–74. It took three officers to restrain the subject and put him on the ground. *Id.* at 1375. Further, but for one officer's knee being pressed against the subject's back when he was on the ground, the record demonstrated restraint by the officers and revealed virtually no use of force after the subject was placed in handcuffs and secured. *Id.*

*Barfield v. Rambosk*, 641 F.App'x. 845 (11th Cir. 2015) is also unavailing. There, the Eleventh Circuit upheld summary judgment in favor of law enforcement officers on the basis of qualified immunity, but did so on a factual record quite distinct from the one in this action. In *Barfield*, the subject arrestee was "a large man" who appeared to be under the influence of alcohol or a controlled substance at the time of the arrest. *Id.* at 846. The record also revealed that the subject actively and continuously resisted arrest. *Id.* at 846–48. Finally, the conduct which formed the basis of the excessive force claims occurred

*before* the subject was handcuffed. *Id.*

Battle fares no better under *Garrett v. Athens*, 378 F.3d 1274 (11th Cir. 2004). There, the Eleventh Circuit reversed the district court's denial of summary judgment in favor of the police officer defendants. However, that case involved a high speed chase covering some thirty miles. *Id.* at 1275–76. A protracted struggle then ensued, and the arrestee fled on foot after unsuccessful attempts to wrestle away an officer's firearm. *Id.* at 1277. The arrestee continued to forcefully resist after he was handcuffed and caused injury to two officers. *Id.* at 1277–78. Eventually, the officers fettered the arrestee by tying his wrists to his ankles. *Id.* at 1278. It was the act of "fettering"—which allegedly led to the arrestee's death by positional asphyxiation—which formed the basis of his mother's excessive force claims against the officers. *Id.* In light of the record evidence, the circuit court concluded that the lower court erred because the facts did not establish a constitutional violation, and even if they did, qualified immunity would apply because the state of the law pertaining to positional asphyxia was unsettled. *Id.* at 1280–81. In short, the record in *Garrett* was strikingly dissimilar to the one in this action.

Because the state of the law at the time of Scott's arrest would have placed a reasonable officer on notice that Battle's conduct—as presented by Scott's filings—was unlawful, the Court concludes that qualified immunity is inappropriate in this case, and Battle's motion for summary judgment is due to be denied.[6]

## II. Scott's Motion for Summary Judgment

---

[6] The Court's conclusion does not mean that Battle cannot prove his entitlement to qualified immunity at trial. It simply means the evidence before the Court is sufficient to warrant a trial on Battle's entitlement to qualified immunity. *See Johnson v. Jones*, 515 U.S. 304, 313 (1995).

The Court now turns to Scott's motion for summary judgment on her excessive force claim. Doing so, it views the record in a light most favorable to Battle and concludes that Scott's motion is also due to be denied.

In essence, Scott maintains that she is entitled to summary judgment because the *Graham* factors weigh in her favor. (Doc. 36, pp. 4-10.) She also requests the Court to "rule Defendant Battle used deadly force … as defined by Fla. Stat. § 776.06." (*Id.* at 10.) Finally, Scott requests the entry of judgment on numerous affirmative defenses raised by Battle.[7] (*Id.* at 11-22.)

As an initial matter, the Court finds that Scott's motion is properly determined by applying the *Graham* factors. The question of whether Battle's *alleged* conduct constitutes "deadly force" under § 776.06 of the Florida Statutes cannot be conclusively decided on this record, and its answer is not determinative of the single constitutional claim raised in this action. The challenged "affirmative defenses" are likewise impertinent—at least at this stage of the proceedings. As Battle points out in his response to Scott's motion for summary judgment, several of the so-called affirmative defenses are "subsumed" by the qualified immunity defense. (Doc. 44, pp. 10–16.) Moreover, Battle expressly withdraws three of the defenses, and asserts that the remaining defenses are not determinative of the excessive force claim.[8] The Court agrees.

---

[7] The defenses include: (1) failure to mitigate damages; (2) lawful exercise of law enforcement officer's rights; (3) existence of probable cause; (4) justifiable use of force under section 776.05 of the Florida Statutes; (5) qualified immunity; (6) conduct taken in good faith; (7) failure to satisfy statutory conditions precedent; (8) set off; (9) failure to state a claim; (10) lawful exercise of law enforcement duties; and (11) application of Florida's "statutory caps" on damages under section 768.28 of the Florida Statutes.

[8] Battle withdraws the lawful exercise of law enforcement duties, statutory conditions precedent, and good faith defenses. (Doc. 44, pp. 10, 13, 14.)

Turning to the *Graham* analysis, the "severity of the crime" factor tilts the scales decidedly against Scott. The record evidence firmly establishes that, before he even approached Scott, Battle was advised that she "just pulled a knife" and reportedly fled from the scene. (Doc. 37-2; Doc. 37-7, p. 25.) Battle testified that it was proper to place Scott in handcuffs under these circumstances alone, and there is nothing in the record to refute this. (Doc. 37-7, p. 25.)

The remaining factors are less conclusive. As to the "presentation of threat" factor, the record clearly demonstrates that Scott was boisterous, irate, and somewhat belligerent both before and after she was handcuffed. (Doc. 37-7, p. 27; Doc. 38, pp. 55, 66–67.) Further, having been advised of Scott's threatening conduct—including the brandishing of a knife minutes earlier—Battle testified to concerns that she might have another weapon. (Doc. 37-7, p. 26.) The record also shows *some* degree of resistance by Scott after she was handcuffed. (Doc. 37-7, pp. 29, 45; Doc. 38, pp. 69–71). Finally, Battle testified that Scott somehow removed the handcuffs after she was on the ground. (Doc. 37-7, p. 38.) This tends to illustrate continued resistance on Scott's part, and also raises questions concerning Scott's physical condition after she was taken to the ground.

Collectively, these facts—viewed in a light most favorable to Battle—demonstrate that it was objectively reasonable for Battle to use force to physically secure and ground a handcuffed arrestee. At the very least, the record presented by Battle raises genuine issues of material fact that are fatal to Scott's motion.

In sum, the Parties' competing motions raise factual disputes which cannot be resolved by the Court on summary judgment. Accordingly, Scott's excessive force claim against Battle will proceed to trial. Should liability be proven, the jury will also consider

issues of causation and damages arising from Scott's purported injury.

## CONCLUSION

Accordingly, it is hereby **ORDERED AND ADJUDGED** that:

1. Plaintiff's Dispositive Motion for Summary Judgment for Her First Amended Complaint's Count I (Excessive Use of Force) Against Defendant Battle and Defendant Battle's Affirmative Defenses (Doc. 36) is **DENIED**; and

2. Defendant Officer Ossie Battle's Motion for Summary Judgment and Incorporated Memorandum of Law (Doc. 39) is **DENIED**.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on August 9, 2016.

_[signature]_
ROY B. DALTON JR.
United States District Judge

Copies:

Counsel of Record